# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CIRCLE GROUP HOLDINGS, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> NURIEEL AKHAMZADEH and FARHAD ) <br> ZAGHI, individuals, ) <br> ) <br> Defendants. ) <br> _____ ) <br> ) <br> NURIEEL AKHAMZADEH, ) <br> ) <br> Counter-Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CIRCLE GROUP HOLDINGS, INC., DANA L. ) <br> DABNEY, GREGORY J. HALPERN, ) <br> EDWARD L. HALPERN, STANFORD J. ) <br> LEVIN, ALAN G. ORLOWSKY, STEVE H. ) <br> SALGAN and MIKE J. THERIAULT, ) <br> ) <br> Counter-Defendants. ) | Case No. 05 C 3921 <br><br> Judge Virginia M. Kendall |

## MEMORANDUM OPINION AND ORDER

Plaintiff Circle Group Holdings, Inc. ("Plaintiff" or "Circle Group") brought this action against Nurieel Akhamzadeh ("Akhamzadeh") and Farhad Zaghi ("Zaghi") (collectively, "Defendants") to enforce claims related to a promissory note signed by Akhamzadeh ("the Note"). Akhamzadeh signed the Note in exchange for shares of Circle Group stock. Plaintiff alleges that Akhamzadeh breached his contract with Plaintiff by failing to pay the Note and that Zaghi intentionally interfered with Akhamzadeh's performance under the Note. Plaintiff also complains that Defendants conspired regarding Zaghi's interference with the Note and to create a sham

consulting agreement whereby Defendants could get access to an additional 2.25 million shares to enable them to pay the Note. A set of facts may exist under which Zaghi would not have been considered Akhamzadeh's agent and Zaghi would not satisfy the conditions to invoke an agent's privilege against a claim of tortious interference. Thus, Defendants' Motion to Dismiss Count II for tortious interference with contract is denied. Additionally, because Plaintiff has alleged a conspiracy between Zaghi and Akhamzadeh and damages that it suffered as a result of the conspiracy, Defendants' Motion to Dismiss Count III for civil conspiracy is denied.

## Plaintiff's Allegations

Circle Group, Holdings, Inc. is an Illinois corporation with its principal place of business in Mundelein, Illinois. (Complaint ("Compl.") ¶ 1.) Circle Group is a publicly traded company. (*Id.*) Zaghi trades stocks on behalf of himself as well as other individuals and entities. (Compl. ¶¶ 5-6.) When Zaghi purchases stock in other names, he maintains control of all the stock. (Compl. ¶ 8.) Zaghi engages in various illegal practices to manipulate the prices of the stock that he owns and controls. (Compl. ¶¶ 11-15.)

By May 1999, Zaghi purchased 50,000 shares of Circle Group's stock for $1,000,000. (Compl. ¶ 17.) Between May 1999 and July 2003, Zaghi, through himself and others, acquired control of additional shares of Circle Group's stock. (Compl. ¶ 22.) During this time, Akhamzadeh opened an account at Wells Fargo Bank and granted Zaghi a power of attorney to sign checks, make withdrawals and transfers, receive bank statements, open other accounts and change ownership of the account. (Compl. ¶ 23.) In July 2003, Circle Group entered into a Consultant Services Agreement with Bay Financial, one of Zaghi's business entities. (Compl. ¶ 24.) Under the Agreement, Bay Financial received warrants for 150,000 shares of Circle Group stock and Zaghi

made himself available, on behalf of Bay Financial, to Circle Group to advice on finance matters. (Compl. ¶ 25.)

During late 2003 and early 2004, Zaghi gathered information on Circle Group's business plan and the products it was developing. (Compl. ¶¶ 26-27.) Circle Group's business plan included a contract with Nestle for Circle Group's product, Z-Trim. (Compl. ¶ 28.) Zaghi anticipated that the value of Circle Group stock would soar after the introduction of Z-Trim. (Compl. ¶ 30.) In March 10, 2004, Circle Group issued Zaghi 125,000 shares of Circle Group stock. (Compl. ¶ 32.) Pursuant to a March 16, 2004 agreement, Zaghi committed to purchasing $3,000,000 more worth of stock. (Compl. ¶ 34.) As of May 2004, Zaghi had paid $500,000 to Circle Group. (Compl. ¶ 35.) Zaghi then devised a plan whereby he would purchase 453,333 shares of Circle Group stock in exchange for a Full Recourse Promissory Note ("the Note") that Akhamzadeh would sign. (Compl. ¶ 37.) Although Akhamzadeh signed the Note and the shares were issued in Akhamzadeh's name, Zaghi controlled both the stock and the payment of the Note. (Compl. ¶¶ 38, 43.) Zaghi was speculating that Circle Group's stock price would rise by virtue of Z-Trim or other products. (Compl. ¶¶ 39, 44.)

As Circle Group's stock price began to decline in June 2004, Zaghi started calling Circle Group's CEO, Greg Halpern, and threatening not to pay the Note. (Compl. ¶¶ 45-46.) When Circle Group did not register the 453,333 shares in June 2004 as planned, Zaghi again threatened to default on the Note. (Compl. ¶ 47.) Without the planned registration, Zaghi could not sell the stock. (*Id.*) In August 2004, when Circle Group registered the 453,333 shares of stock, the stock price was too low to sell at a profit. (Compl. ¶¶ 50-51.) Zaghi, anticipating Z-Trim's success, decided to retain

the stock. (Compl. ¶ 53.) On October 1, 2004, Circle Group reached an agreement with Akhamzadeh to extend the due date on the Note until December 31, 2004. (Compl. ¶ 54.)

On October 11, 2004, Zaghi purchased an additional 1,000,000 shares of Circle Group stock. (Compl. ¶ 55.) Shortly after this purchase and the extension of the due date on the Note, Nestle ceased using Z-Trim, causing Circle Group's stock price to drop again. (Compl. ¶¶ 56-57.) In December 2004, Zaghi refused to pay on the Note and instead, with the cooperation of Akhamzadeh, devised a scheme to defraud Circle Group. (Compl. ¶ 58.) Zaghi proposed that Circle Group enter into a consulting agreement (similar to the Bay Financial Consulting Agreement) whereby certain Israeli consultants would do promotional work for Circle Group in Israel in exchange for 2.25 million additional restricted shares. (Compl. ¶ 59.) Akhamzadeh selected the phony consultants. (Compl. ¶ 60.) Both Zaghi and Akhamzadeh knew that the consultants were a sham and the consulting agreement was merely a scheme to get access to an additional 2.25 million shares to enable them to pay the Note. (Compl. ¶ 61.) The sham consulting agreement also permitted Akhamzadeh to avoid making the December payment that was due on the Note. (Compl. ¶ 90.)

Throughout late 2004 and early 2005, Zaghi repeatedly transferred large amounts of Circle Group stock through Terra Nova Trading, LLC, to Akhamzadeh and to others. (Compl. ¶ 62.) By January 21, 2005, Zaghi had sold the entire 453,333 shares that were purchased pursuant to the Note. (Compl. ¶ 67.) Zaghi, however, continually denied to Halpern and others at Circle Group that he was selling the stock. (Compl. ¶ 66.) On December 30, 2004 and January 26, 2005, Zaghi tendered checks to Circle Group in the total amount of $900,000 as payment toward the amount due on the Note. (Compl. ¶ 68.) On March 1, 2005, Zaghi signed two more checks drawn on Akhamzadeh's account at Wells Fargo Bank in the amounts of $175,000 and $325,000, as further payment on the

4

Note. (Compl. ¶ 70.) Circle Group deposited the $175,000 check, but Zaghi instructed Circle Group not to cash the $325,000 until he gave them further notice. (Compl. ¶¶ 71-72.) On April 19, Circle sent a letter to Akhamzadeh requesting clearance to cash the $325,000 check. (Compl. ¶ 73.) Receiving no response from Akhamzadeh or Zaghi, Circle Group deposited the check. (Compl. ¶ 75.) The check was returned as insufficient funds. (Compl. ¶ 76.) On April 29, 2005, Circle Group sent Zaghi a letter demanding payment of the balance due on the Note. (Compl. ¶ 77.) An outstanding balance of $965,000 remains due on the Note. (Compl. ¶ 79.)

## Procedural History

Plaintiff Circle Group filed this case in the Circuit Court of Lake County on May 11, 2005. On July 7, 2005, Zaghi removed the case to federal court based upon the diversity of the parties and the amount in controversy. On September 9, 2005, Plaintiff filed a First Amended Complaint, Count I of which alleged that Akhamzadeh executed a promissory note in exchange for Circle Group stock and that he breach his contract to pay on the Note; Count II alleged that Zaghi committed federal securities fraud by manipulating Circle Group's stock. On November 3, 2005, Akhamzadeh answered Count I and raised several affirmative defenses. Akhamzadeh also asserted counterclaims against Circle Group for common law fraud, statutory fraud and breach of contract and against its directors and officers for fraud. On December 16, 2005, Circle Group filed a Second Amended Count II alleging that Zaghi tortiously interfered with the contract between Circle Group and Akhamzadeh and adding Count III against both Defendants for civil conspiracy.

On December 27, 2005, Farshad Zaghi, Zaghi Trading Partnership and Pac Bay, Inc. filed a case in this district against Circle Group and its officers and directors, 05 C 7214. In the amended complaint filed March 3, 2006, Farshad Zaghi, Zaghi Trading Partnership and Pac Bay, Inc. allege

5

common law fraud and statutory fraud; and on May 1, 2006, they sought leave to add an additional count for breach of contract. Because case no. 05 C 7214 is related to this case, the two cases have been consolidated pursuant to Rule 42(a) and Local Rule 40.4.

**DISCUSSION**

When considering a motion under Rule 12(b)(6), a court must take as true all facts alleged in the complaint and construe all reasonable inferences in favor of the plaintiff. *See Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995). The plaintiff need not allege all of the facts involved in the claim and can plead conclusions. *Higgs v. Carter*, 286 F.3d 437, 439 (7th Cir. 2002); *see Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (stating that "[m]atching facts against legal elements comes later"). Any conclusions pleaded, however, must "provide the defendant with at least minimal notice of the claim," *Kyle v. Morton High School*, 144 F.3d 448, 455 (7th Cir. 1998), "includ[ing] the operative facts upon which plaintiff bases his claim." *Lucien v. Preiner*, 967 F.2d 1166, 1168 (7th Cir. 1992); *see Sanjuan*, 40 F.3d at 251 ("One pleads a 'claim for relief' by briefly describing the events"). A Rule 12(b)(6) motion will not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

**I.     Count II – Intentional Interference With a Contract**

In order to establish a claim for intentional interference with a contract, a plaintiff must prove: (1) the existence of a valid, enforceable contract between the plaintiff and a third party; (2) defendant's knowledge of that contract; (3) defendant's intentional and unjustified inducement of the third party to breach the contract; (4) a subsequent breach by the third party resulting from defendant's wrongful conduct; and (5) damages suffered by the plaintiff as a result of the breach.

6

*Strosberg v. Brauvin Realty Serv.*, 691 N.E.2d 834, 845 (Ill. App. 1998). Defendants argue that (1) because Zaghi was a *de facto* party to the Note, he could not interfere with his own contract and (2) as Akhamzadeh's agent, Zaghi had a conditional privilege to interfere with the Note.

A.  **Parties to the Note**

A party cannot be liable in tort for interfering with its own contract. *See IK Corp. v. One Financial Place Partner*, 558 N.E.2d 161, 172 (Ill. App. 1994) ("[I]t is indisputable that a party cannot tortiously interfere with its own contract"). Akhamzadeh signed the Note for $2,040,000 in exchange for shares of Circle Group stock issued in his name. (Compl. ¶¶ 42-43.) Plaintiff has alleged that "[a] valid and enforceable contract in the form of the Note existed between Circle Group and Akhamzadeh." (Compl. ¶ 81.) Whatever Zaghi's actions or representations regarding the Note, there are no allegations that Zaghi is bound legally by its terms. In line with its allegations, Plaintiff has not brought a breach of contract claim against Zaghi, only Akhamzadeh. (*See* Count I of First Amended Complaint.) Thus, under Plaintiff's allegations, Zaghi is not a party to the contract. As a non-party to the contract, Zaghi could have interfered tortiously with the contract between Plaintiff and Akhamzadeh.

B.  **Agency**

An agent is conditionally privileged against a claim that it interfered in a third party's relationship with the principal. *See Traum v. Equitable Life Assurance Soc'y of the U.S.*, 240 F. Supp. 2d 776, 792 (N.D. Ill. 2002). Generally, an agent is "one who undertakes to manage some affairs to be transacted for another by his authority, on account of the latter, who is called the principal, and to render an account." *Wargel v. First Nat'l Bank of Harrisburg*, 460 N.E.2d 331, 334 (Ill. App. 1984). The parties first dispute whether Zaghi was acting as Akhamzadeh's agent in

7

dealing with Circle Group over the Note. The parties also dispute whether Zaghi satisfies the conditions for the privilege to apply.

State law governs whether Zaghi and Akhamzadeh had an agency relationship. *See Valenti v. Qualex*, 970 F.2d 363, 367-68 (7th Cir. 1992). Under Illinois law, "[t]he test to determine whether a principal-agent relationship exists is whether the alleged principal has the right to control the agent, and whether the alleged agent can affect the legal relationships of the principal." *Chemtool, Inc. v. Lubrication Technologies, Inc.*, 148 F.3d 742, 744 (7th Cir. 1998), citing *Moy v. County of Cook*, 264 N.E.2d 265, 267 (Ill App. 1993). Whether an agency relationship exists and its extent ordinarily are questions of fact. *See Raclaw v. Fay, Conmy & Co.*, 282 Ill.App.3d 764, 767, 668 N.E.2d 114, 117, 217 Ill.Dec. 929, 932 (1st Dist. 1996). Of course, if the agency relationship is so clear as to be undisputed, these issues may be decided as a matter of law. *See Brunswick Leasing Corp. v. Wisconsin Cent., Ltd.*, 136 F.3d 521, 526 (7th Cir. 1998).

While a complaint need not anticipate defenses or plead facts to overcome them, a plaintiff "may plead itself out of court by alleging (and thus admitting) the ingredients of a defense." *U.S. Gypsum Co. v. Indiana Gas Co., Inc.*, 350 F.3d 623, 626 (7th Cir. 2003). Defendants argue that Plaintiff's allegations indisputably show that Zaghi acted as Akhamzadeh's agent:[1]

---

[1] A letter to Zaghi from Dana Dabney, Chief Financial Officer of Circle Group, states that "[a]s [Akhamzadeh's] agent, you may also become subject to related prosecution." *See* Exhibit A to Defendants' Reply in Support of Their Motion to Dismiss. The letter, referenced in ¶ 77 of the Complaint, demands payment on the Note. Documents attached to a motion to dismiss may be considered part of the pleadings for purposes of Rule 12(b)(6) if they are referred to in the complaint and central to plaintiff's claims. *See 188 LLC v. Trinity Industries, Inc.*, 300 F.3d 730, 735 (7th Cir. 2002). This exception to the general rule that a court may not consider matters outside of the pleadings on a motion to dismiss is narrow and "aimed at cases interpreting, for example, a contract." *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998); *see Wright v. Assoc. Ins. Companies, Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994) (considering health care agreement that was basis for contract claims and repeatedly quoted from and referred to in complaint). In this case, an

> Under Zaghi's scheme, he would control both the stock and the payment of the Note. (Compl. ¶ 38.)

> In an effort to act more freely in stock acquisitions . . . Zaghi caused Akhamzadeh to open an account at Wells Fargo Bank and granted Zaghi a power of attorney over the account limited to signing checks, making withdrawals and transfers, receipt of bank statements opening of other accounts, changing ownership of the account and access to any safe deposit box. (Compl. ¶ 23.)

> Facing repeated demands from Circle Group to pay the amounts due under the Note, Zaghi caused a check for $400,000.00 to be issued to Circle Group on December 30, 2004, and another check for $500,000 to be issued to Circle Group on January 26, 2004. (Compl. ¶ 68.)

> Realizing that Zaghi was the person who controlled not only the Note, but all stock held in Akhamzadeh's name, Circle Group sent a letter to Zaghi and Akhamzadeh on February 28, 2005, verifying the amounts already paid under the Note and demanding payment in full. (Compl. ¶ 69.)

> On March 1, 2005, Zaghi caused two checks, Check Nos. 1029 and 1039, from Akhamzadeh's account at Wells Fargo Bank in the amounts of $175,000.00 and $325,000.00, respectively, to be issued to Circle Group as further payment on the Note. (Compl. ¶ 70.)

> Zaghi not only had knowledge of the Note, but also controlled Akhamzadeh's performance under the Note. (Compl. ¶ 82.)

"In general, an agency relationship is characterized by a fiduciary affiliation between two individuals in which the principal exercises some degree of control over the conduct of the agent, and the agent has the power to act on behalf of the principal." *Horwitz v. Holabird & Root*, 816 N.E.2d 272, 285 (Ill. 2004). This description does not fit Circle Group's allegations of the relationship between Zaghi and Akhamzadeh. Circle Group's allegations paint Akhamzadeh as a

---

example of a document central to Plaintiff's claims is the Note. The collection letter sent to Zaghi, while it may support Circle Group's claims, is not central to its claims against Defendants. *See Venture Associates Corp. v. Zenith Data Systems Corp.*, 987 F.2d 429, 431-32 (7th Cir. 1993) (considering documents on motion to dismiss that constituted the core of the parties' contractual relationship). As such, the Court cannot consider it in determining whether Zaghi acted as Akhamzadeh's agent.

strawman, rather than a principal directing the actions of his agent. Akhamzadeh exercised little or no control over Zaghi's conduct nor was Zaghi acting primarily on behalf of Akhamzadeh. Instead, Zaghi controlled the stock issued and the payments made under the Note, without direction or guidance from Akhamzadeh. While Zaghi could be seen as Akhamzadeh's agent because Zaghi's actions were taken in Akhamzadeh's name, such a strawman relationship is inconsistent with traditional principles of agency. *See Horwitz*, 816 N.E.2d at 285; *Wargel*, 460 N.E.2d at 334. Accordingly, a set of facts exists under which Zaghi may not be considered Akhamzadeh's agent in his dealings with Circle Group regarding the Note.

Even if Zaghi was acting as Akhamzadeh's agent in negotiating the Note, Zaghi can be liable for interfering with his principal's contract if "the agent's intentional acts were not taken to further its principal's best interests, but to further its personal goals or to injure the other party to the contract."[2] *Waldinger v. CRS Group Engineers, Inc.*, 775 F.2d 781, 790 (7th Cir. 1985). Privileged actors are also "unjustified in using illegal means to induce a breach of contract." *HPI Health Care*, 545 N.E.2d at 678. Plaintiff alleged that "Zaghi's actions were not taken or motivated in any way to better Akhamzadeh's interests, but instead were taken to better Zaghi's own interests and, ultimately, to damage Circle Group." (Compl. ¶ 85.) The facts in the complaint regarding Zaghi's

---

[2] It is unclear the extent to which an agent must not only act in its own interest or to injure the other party to the contract, but also contrary to the interests of the principal. *Compare George A. Fuller Co. v. Chicago College of Osteopathic Medicine*, 719 F.2d 1326, 1333 (7th Cir. 1983) (agent liable if he "induced the breach to further [his] personal goals or to injure the other party to the contract, *and* acted contrary to the best interest of the [principal]") (emphasis in original) *with Stafford v. Puro*, 63 F.3d 1436, 1442 (7th Cir. 1995) ("Directors and officers are not justified in acting solely for their own benefit or solely in order to injure the plaintiff because such conduct is contrary to the best interests of the corporation") and *HPI Health Care Services, Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 678 (Ill. 1989) ("A defendant who is protected by a privilege, however, is not justified in engaging in conduct which is totally unrelated or even antagonistic to the interest which gave rise to defendant's privilege").

control over the stock issued and the payments made under Note, support this allegation. *See Fuller Co.*, 719 F.2d at 1333 (a claim for intentional interference requires allegations indicting that defendants interfered with principal's contract out of personal motive and without intent to further the interest of the principal). Thus, even assuming that Zaghi was Akhamzadeh's agent, Plaintiff has alleged facts that could defeat his claim of privilege.

## II.  Count III – Civil Conspiracy

Plaintiff alleges that Defendants conspired (1) to interfere with and breach the Note and (2) to instigate a sham consulting agreement in order to delay their payment on the Note and receive 2.25 million share of Circle Group stock to use in paying the Note. A civil conspiracy claim involves: "(1) an agreement between two or more persons to participate in an unlawful act or a lawful act in an unlawful manner; (2) an injury caused by the defendant; and (3) an overt act committed in furtherance of the common scheme." *Suburban 1, Inc. v. GHS Mortgage, LLC*, 833 N.E.2d 18, 22 (Ill. App. 2005).

Akhamzadeh cannot be sued for tortiously interfering with his own contract, but he and Zaghi can be sued for conspiring to induce Akhamzadeh's breach. *See Regan v. Garfield Ridge Trust & Sav. Bank*, 591 N.E.2d 759, 769 (Ill. App. 1991). In this regard, Defendants, and Plaintiff for that matter, are wrong that a civil conspiracy claim can survive only as long as it includes additional defendants or new facts not already pleaded in the underlying tort. Although true that a plaintiff is precluded from recovering damages twice for the same conduct – once based on the underlying tort claim and once based on the conspiracy claim – a plaintiff is not precluded from pursuing these claims in the alternative. *See Zurich Capital Markets Inc. v. Coglianese*, 332 F. Supp. 2d 1087, 1119 (N.D. Ill. 2004) (denying motion to dismiss even though civil conspiracy count duplicated other

counts alleging the same torts); *Thermodyne Food Service Products, Inc. v. McDonald's Corp.*, 940 F.Supp. 1300, 1310 (N.D. Ill. 1996) (permitting both civil conspiracy claim and underlying tort claim to go to jury); *but see Real Colors, Inc. v. Patel*, 974 F. Supp. 645, 651 (N.D. Ill. 1997) (granting motion to dismiss on grounds that plaintiff did not alleged any new facts or bring in any new defendants through its charge of conspiracy). Thus, as to Zaghi, the conspiracy count presents an alternative theory of recovery for tortious inducement and, as to Akhamzadeh, the conspiracy count could make him liable for Zaghi's acts in inducing him to breach the contract.[3]

Because an injury caused by Defendants' actions is an element of Plaintiff's civil conspiracy claim, some damages must be alleged. Plaintiff alleges that "[a]bsent the conspiratorial scheme, Circle Group would have been paid for the stock in 2004 and would have avoided the astronomical costs of collection. Also, absent the sham consulting agreement, Circle Group would have had legitimate consultants in Israel and would have developed business in that forum." (Compl. ¶ 90.) At the motion to dismiss stage, a court will not delve deep into the potential merits of a plaintiff's claims. While Plaintiff's claim of injury may seem speculative at this point, it cannot be said beyond doubt that there are no set of facts under which they would be entitled to relief.

**Conclusion and Order**

Taking as true all facts alleged in the complaint and construing all reasonable inferences in favor of Plaintiff, Plaintiff has stated a claim against Zaghi for tortious interference with contract and against both Defendants for civil conspiracy. Wherefore, Defendants Nurieel Akhamzadeh's and

---

[3] If it were proved later that Zaghi acted as Akhamzadeh's agent regarding the Note, the civil conspiracy claim may be dismissed since an agent cannot conspire with his principal. *See Eisenhauer v. Stern*, 2000 WL 136011, *1 (N.D. Ill. 2000), citing *Buckner v. Atlantic Plant Maintenance, Inc.*, 694 N.E.2d 565, 571 (Ill. 1998).

Farhad Zaghi's Rule 12(b)(6) Motion to Dismiss Counts II and III of the Second Amended Complaint is denied.

    So ordered.

                                           _____
                                           Virginia M. Kendall, United States District Judge
                                           Northern District of Illinois

Date: September 1, 2006